MICHAEL ANTHONY WILLIAMS AND KATHERINE WILLIAMS, PLAINTIFFS v. RONALD FLOYD HOLSCLAW AND CITY OF RALEIGH, DEFENDANTS

No. COA96-1534

(Filed 6 January 1998)

**1. Municipal Corporations § 445 (NCI4th)— automobile accident—police officer—damages sought less than insurance policy—immune**

The trial court did not err by granting summary judgment for defendant City and a police officer, in his official capacity, in a negligence action arising from an automobile accident in which the officer was involved while on duty where plaintiffs sought damages less than $1,000,000 and the City had purchased liability insurance for claims between $1,000,000 and $10,000,000.

**2. Public Officers and Employees § 35 (NCI4th)— police officer—automobile accident—no personal liability**

The trial court properly granted summary judgment in favor of defendant law enforcement officer in his individual capacity on a negligence claim arising from an automobile accident in which he was involved while responding to a call where plaintiffs sought

monetary damages against the City and the officer, so that they were seeking recovery from the officer in both his individual and official capacities even thought the caption was silent as to the capacity in which he was sued; it is undisputed that the officer is a public official; his actions fall within the scope of his official discretion as a police officer; and plaintiffs advanced no allegations of corruption or malice.

**3. Insurance § 518 (NCI4th)— collision with police vehicle—immunity—availability of UM coverage**

The trial court erred by granting defendant insurer's motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) where plaintiff was involved in an automobile accident with a police officer who was responding to a call; summary judgment was granted for the City and the officer because the officer's actions fell within his official discretion and plaintiffs' claim was for an amount less than the City's insurance coverage; and defendant was plaintiffs' uninsured motorist insurer. Although N.C.G.S. § 20-279.21(b)(3) contains a restriction to persons who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and plaintiffs were not legally entitled to recover from the officer because he was immune, the statute also expressly excepts vehicles owned by political subdivisions from the legally entitled to recover exclusion. A section of a statute dealing with a specific situation controls other sections which are general and barring compensation based solely on being rear-ended by a municipal vehicle is contrary to the remedial purpose of the statute. Moreover, precluding coverage in no way advances the rationale supporting the doctrine of sovereign immunity and the inequity of depriving an insured party of the benefit of his or her UM premium is self-evident.

Judge GREENE concurring.

Judge WYNN concurring in the result.

Appeal by plaintiffs from orders entered 4 October 1996 and 24 October 1996 by Judge Henry V. Barnette, Jr., in Wake County Superior Court. Heard in the Court of Appeals 28 August 1997.

## WILLIAMS v. HOLSCLAW

[128 N.C. App. 205 (1998)]

*Fuller, Becton, Slifkin & Bell, by James C. Fuller, Asa L. Bell, Jr., and Maria J. Mangano, for plaintiff-appellants.*

*Raleigh City Attorney Thomas A. McCormick, by Associate City Attorney Dorothy K. Woodward, for defendant-appellees.*

*Law Offices of Robert E. Ruegger, by Robert E. Ruegger, for unnamed defendant-appellee Integon Indemnity Corporation.*

*Glenn, Mills & Fisher, P.A., by Stewart W. Fisher, amicus curiae, for North Carolina Academy of Trial Lawyers.*

MARTIN, Mark D., Judge.

Plaintiffs appeal from orders granting summary judgment to defendants Ronald Holsclaw (Officer Holsclaw) and the City of Raleigh (collectively the municipal defendants) and dismissing unnamed defendant Integon Indemnity Corporation (Integon).

On 13 November 1994 plaintiff Michael Williams (Williams) was involved in an automobile accident with Officer Holsclaw, an on-duty City of Raleigh (City) police officer. Officer Holsclaw, while responding to a call, switched channels on his police radio to monitor the situation. After changing the channel, he saw Williams' vehicle ahead of him but was unable to avoid impact. As a result of this collision, Williams suffered injuries and his automobile was damaged.

On 19 December 1995 Williams and his wife, Katherine, filed suit against the municipal defendants alleging Officer Holsclaw's negligence caused the collision. Defendants answered and alleged the claims were barred by sovereign immunity and public officer immunity. Plaintiffs then served the uninsured motorist carrier, unnamed defendant Integon.

On 18 July 1996 Integon filed a motion to dismiss pursuant to North Carolina Rule of Civil Procedure 12(b)(6). On 9 August 1996 the municipal defendants filed a motion for summary judgment. On 4 October 1996 the trial court granted the municipal defendants' motion for summary judgment on the grounds of governmental immunity and public officers' immunity. On 24 October 1996 the trial court granted Integon's motion to dismiss. Specifically, as plaintiffs were legally prevented from recovering against the municipal defendants, Williams' uninsured motorist (UM) carrier, Integon, was also shielded from liability under the UM statute.

WILLIAMS v. HOLSCLAW

[128 N.C. App. 205 (1998)]

[1] On appeal, plaintiffs contend the doctrine of sovereign immunity does not shield the municipal defendants from liability.

"Under the doctrine of governmental immunity, a municipality is not liable for the torts of its officers and employees if the torts are committed while they are performing a governmental function." *Taylor v. Ashburn*, 112 N.C. App. 604, 607, 436 S.E.2d 276, 278 (1993), *disc. review denied*, 336 N.C. 77, 445 S.E.2d 46 (1994). Law enforcement is well established as a governmental function. *Hare v. Butler*, 99 N.C. App. 693, 698, 394 S.E.2d 231, 235, *disc. review denied*, 327 N.C. 634, 399 S.E.2d 121 (1990).

Officer Holsclaw was performing his official duties as a police officer when he responded to a call at the time of the collision. Therefore, the City and Officer Holsclaw, in his official capacity, are generally immune from suit under the governmental immunity doctrine. *Taylor*, 112 N.C. App. at 607, 436 S.E.2d at 279 (police officers, as public officers, share in the immunity of their governing municipalities).

A municipality may waive immunity, however, by purchasing liability insurance or by joining a local government risk pool. N.C. Gen. Stat § 160A-485 (1994); *Combs v. Town of Belhaven*, 106 N.C. App. 71, 73, 415 S.E.2d 91, 92 (1992) (discussing the purchase of insurance). The municipality generally retains civil tort liability immunity to the extent it does not participate in a local governmental risk pool or purchase liability insurance. N.C. Gen. Stat. § 160A-485 (1994).

The record in the instant action indicates the City purchased liability insurance for claims between $1,000,000 and $10,000,000, but is wholly uninsured for claims under or above this range. Because plaintiffs seek damages less than $1,000,000, immunity has not been waived and the City and Officer Holsclaw, in his official capacity, are entitled to summary judgment.

[2] Although Officer Holsclaw is immune from suit in his official capacity, we must still determine whether he can be held personally liable in his individual capacity. Our Supreme Court recently noted, "[the] crucial question for determining whether a defendant is sued in an individual or official capacity is the nature of the relief sought, not the nature of the act or omission alleged." *Meyer v. Walls*, 347 N.C. 97, ——, 489 S.E.2d 880, 887 (1997) (quoting Anita R. Brown-Graham & Jeffrey S. Koeze, *Immunity from Personal Liability under State*

**WILLIAMS v. HOLSCLAW**

[128 N.C. App. 205 (1998)]

*Law for Public Officials and Employees: An Update,* Loc. Gov't L. Bull. 67, at 7 (Inst. of Gov't, Univ. of N.C. at Chapel Hill), Apr. 1995).

> If money damages are sought, the court must ascertain whether the complaint indicates that the damages are sought from the government or from the pocket of the individual defendant. If the former, it is an official-capacity claim; if the latter, it is an individual-capacity claim; and if it is both, then the claims proceed in both capacities.

*Id.*

The caption of the present complaint is silent as to whether Officer Holsclaw is sued in his official or individual capacity. Plaintiffs do indicate, however, they are seeking monetary damages from both the City and Officer Holsclaw. As a result, plaintiffs are seeking recovery from Officer Holsclaw in both his individual and official capacities.

It is undisputed that Officer Holsclaw is a public official. *See Jones v. Kearns,* 120 N.C. App. 301, 305, 462 S.E.2d 245, 247, *disc. review denied,* 342 N.C. 414, 465 S.E.2d 541 (1995). " 'As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability.' " *Collins v. North Carolina Parole Commission,* 344 N.C. 179, 183, 473 S.E.2d 1, 3 (1996) (quoting *Smith v. State,* 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976)).

After careful review of the record, we conclude Officer Holsclaw's actions fall within the scope of his official discretion as a police officer. In addition, plaintiffs do not advance allegations of corruption or malice. Accordingly, summary judgment was properly granted in favor of Officer Holsclaw in his individual capacity.

[3] Plaintiffs alternatively contend that Integon, as Williams' UM carrier, should not benefit from the defense of governmental and public officer immunity, and, consequently, should be obligated to provide UM coverage to Williams. We agree.

The UM statute, N.C. Gen. Stat. 20-279.21(b)(3), states, in broad, declaratory terms, "[n]o policy of bodily injury liability insurance . . . shall be delivered or issued for delivery in this State . . . unless coverage is provided therein or supplemental thereto . . . for the protection of persons insured thereunder who are *legally entitled to recover*

damages from owners or operators of uninsured motor vehicles . . . ." (emphasis added).

According to *Brown v. Casualty Co.*, 285 N.C. 313, 319, 204 S.E.2d 829, 834 (1974), a plaintiff's right to recover against his insurer under the UM endorsement is derivative and conditional on plaintiff being legally entitled to recover against the tortfeasor.

Because Officer Holsclaw was immune from suit and plaintiffs were therefore not legally entitled to recover, the trial court dismissed plaintiffs' claims against Integon. Notwithstanding the "legally entitled to recover" restriction imposed by section 20-279.21, plaintiffs submit that Integon should be responsible for payment under its UM policy with Williams.

The "legally entitled to recover" restriction was first reviewed in *Brown*, a wrongful death action where plaintiff did not file his complaint against the tortfeasor within the statute of limitations. In determining the UM carrier was not liable, the Supreme Court noted

> [t]o be "legally entitled to recover damages", a plaintiff must not only have a cause of action but a remedy by which he can reduce his right to damage to judgment. . . . Plaintiff's right to recover against his intestate's insurer under the uninsured motorist endorsement is derivative and conditional. . . . Any defense available to the uninsured tortfeasor should be available to the insurer. The argument that a plea of the statute of limitations is personal to the tortfeasor and not available to the insurance company flies in the face of the policy.

*Brown*, 285 N.C. at 319-320, 204 S.E.2d at 833-834.

Subsequent North Carolina cases have strictly interpreted the "legally entitled to recover" language. For example, in *Spivey v. Lowery*, 116 N.C. App. 124, 446 S.E.2d 835 (1994), an underinsured motorist (UIM) coverage case, plaintiff's general release of the tortfeasor barred any claim against the carrier. In reaching this conclusion, the *Spivey* court reaffirmed the rule that an insurance carrier's liability is derivative of the tortfeasor's liability. *Id.* at 128, 446 S.E.2d at 838.

Similarly, in *Grimsley v. Nelson*, 342 N.C. 542, 467 S.E.2d 92, *reh'g denied*, 343 N.C. 128, 468 S.E.2d 774 (1996), plaintiffs' complaint was dismissed where they failed to properly serve the alleged tortfeasor. The Court affirmed the dismissal of plaintiffs' UM carrier because its

only obligation was to pay any potential judgment against the defendant, which was no longer possible due to lack of jurisdiction. *Id.* at 548, 467 S.E.2d at 96.

An exception to strict interpretation of the "legally entitled to recover" restriction was noted in *Silvers v. Horace Mann Ins. Co.*, 324 N.C. 289, 294, 378 S.E.2d 21, 25 (1989), a wrongful death action involving an automobile accident which killed plaintiff's son. Plaintiff violated the terms of her insurance policy by settling with the driver and his insurance carrier without giving notice to her UIM carrier. Plaintiff then brought an action against her UIM carrier to recover the deficiency. Defendant carrier claimed plaintiff was no longer entitled to recover from her UIM carrier because she was no longer entitled to recover from the tortfeasor. *Id.* at 292-293, 378 S.E.2d at 24.

The *Silvers* Court disagreed, holding the action against the UIM carrier could survive entry of a consent judgment between plaintiff and the tortfeasor (and his insurer). *Id.* at 296, 378 S.E.2d at 26. What distinguished the case from *Brown*, according to the court, was the existence of additional language in the UIM statute indicating a UIM payment would not be made until the vehicle insurance had been exhausted, either through judgment or settlement. *Id.* at 294-295, 378 S.E.2d at 25.

To resolve the ambiguity in these two provisions, the Supreme Court looked to the legislature's purpose and intent in drafting the UIM statute. Because the statute was remedial in nature, the Court reasoned it should be "liberally construed to effectuate its purpose of providing coverage for damages to injured parties caused by insured motorists with liability coverage not sufficient to provide complete compensation for the damages." *Id.* at 296, 378 S.E.2d at 26 (quoting *Silvers v. Horace Mann Ins. Co.*, 90 N.C. App. 1, 5, 367 S.E.2d 372, 375 (1988)). Based on principles of statutory interpretation and the remedial purpose underlying the statute, the Court concluded it was not the intent of the General Assembly to prohibit plaintiff from recovering UIM benefits from her carrier. *Id.* As a result, the Supreme Court held plaintiff's consent judgment with tortfeasor did not bar her, as a matter of law, from recovering under her UIM policy. *Id.*

In *Gurganious v. Integon General Ins. Corp.*, 108 N.C. App. 163, 423 S.E.2d 317 (1992), *disc. review denied*, 333 N.C. 538, 429 S.E.2d 558 (1993), a suit for damages stemming from an automobile accident, this Court found a similar statutory ambiguity in the UIM statute and held plaintiffs were not barred from recovering UIM benefits

from defendant even though their suit against the tortfeasor had been dismissed with prejudice. *Id.* at 168, 423 S.E.2d at 320.

Admittedly, the *Silvers* and *Gurganious* holdings represent narrow exceptions to *Brown's* UM and UIM derivative liability doctrine. Nonetheless, *Silvers* and *Gurganious* modify the general rule of *Brown* where there is conflicting and ambiguous statutory language.

We therefore turn to closer review of the UM statute. Specifically, in defining "uninsured motor vehicle," section 20-279.21(b)(3) provides the term shall *not* include "[a] motor vehicle that is owned by the United States of America, Canada, a state, or any agency of any of the foregoing (excluding, however, political subdivisions thereof)." (emphasis added). In other words, vehicles owned by political subdivisions, including the City, are expressly excepted from the statutory exclusion.

Three well established canons of statutory construction coalesce to reveal the legislative intent behind section 20-279.21(b)(3). First, it is beyond question that "a section of a statute dealing with a specific situation controls . . . other sections which are general in their application." *Utilities Comm. v. Electric Membership Corp.*, 275 N.C. 250, 260, 166 S.E.2d 663, 670 (1969). Specifically, "the specially treated situation is regarded as an exception to the general provision." *Id.*

When the conflicting provisions embodied in section 20-279.21(b)(3) of the UM statute are construed under this canon of construction, it is manifest that the particular provision, which excepts vehicles owned by political subdivisions from the statutory exclusion, is more narrowly tailored than the very broad "legally entitled to recover" proviso found in section 20-279.21(b)(3).

Second, an individual section of a statute will not be interpreted in such a manner that renders another provision of the same statute meaningless. *Brown v. Brown*, 112 N.C. App. 15, 21, 434 S.E.2d 873, 878 (1993). "All parts of the same statute dealing with the same subject are to be construed together as a whole, and every part thereof must be given effect if this can be done by any fair and reasonable interpretation." *State v. Tew*, 326 N.C. 732, 739, 392 S.E.2d 603, 607 (1990). In addition, a construction of a statute that hinders its purpose must be avoided if courts can reasonably do so without doing violence to the legislative language. *Id.*

Perhaps most importantly, the nature of the UM statute is remedial and therefore should be liberally construed to accomplish the

## WILLIAMS v. HOLSCLAW

[128 N.C. App. 205 (1998)]

beneficial purpose intended by the General Assembly. *Hendricks v. Guaranty Co.*, 5 N.C. App. 181, 184, 167 S.E.2d 876, 878 (1969). The purpose of the statute is to provide some financial recompense to innocent persons who receive bodily injury or property damage due to the negligence of uninsured motorists or those unidentified drivers who leave the scene of an accident, *i.e.*, those who cannot be made to respond to damages. *Id.*

Barring compensation to injured motorists based solely on the fortuity of being rear-ended by a "municipal" vehicle is contrary to the remedial purpose of the UM statute. Moreover, precluding UM coverage in the present case in no way advances the rationale supporting the doctrine of sovereign immunity. Finally, the patent inequity of depriving an insured party of the benefit of his or her UM premium is self-evident.

Accordingly, plaintiffs are not barred from recovering UM benefits from Integon due to the immunity granted to Officer Holsclaw and the City. We therefore affirm the trial court's grant of summary judgment in favor of the municipal defendants and reverse the trial court's dismissal of unnamed defendant Integon.

Affirmed in part and reversed in part.

Judge GREENE concurs with separate opinion.

Judge WYNN concurs in the result only with separate opinion.

Judge GREENE concurring.

I agree with the majority that Integon is required to provide uninsured motorist coverage to the plaintiff in this case. To hold otherwise would circumvent the intent of section 20-279.21(b)(3) to provide insurance coverage to insured parties who are injured and damaged by persons not having liability insurance. *See* N.C.G.S. § 20-279.21(b)(3) (1993). Furthermore, to allow the uninsured carrier to assert the municipality's sovereign immunity would circumvent the intent of the legislature that vehicles owned by municipalities can be uninsured vehicles within the meaning of section 20-279.21(b)(3). The lack of insurance by the municipality qualifies the vehicle as an uninsured vehicle within the meaning of section 20-279.21(b)(3). It would be absurd to believe that the legislature intended that this same lack of insurance would simultaneously disqualify the vehicle from uninsured insurance coverage within the meaning of section 20-

279.21(b)(3). *See Comr. of Insurance v. Automobile Rate Office*, 294 N.C. 60, 68, 241 S.E.2d 324, 329 (1978) (courts must construe statutes so as to avoid absurd results). For these additional reasons I join with the majority in reversing the trial court's grant of Integon's motion to dismiss.

Judge WYNN concurring in the result:

Since the doctrine of sovereign immunity bars any recovery by Mr. and Mrs. Williams from the City of Raleigh or its negligent officer, *see, Jones v. Kearns*, 120 N.C. App. 301, 462 S.E.2d 245, *disc. review denied*, 342 N.C. 414, 465 S.E.2d 541 (1995) (Wynn, J. concurring in the result), it would indeed add further insult to Mr. Williams' injuries to deny him an opportunity to recover under the uninsured motorist provision of his own insurance policy. Whether we term the application of the doctrine of sovereign immunity as a shield from liability is unimportant, the net effect is that the City maintains no insurance coverage for the negligent acts of its employees for damages under $1,000,000.00. In short, as to Mr. Williams, the City is uninsured. Under the circumstances of this case, finding coverage under the uninsured motorist provision of the policy is the correct outcome.